The Fourth District Appellate Court of the State of Illinois has now convened. The Honorable John W. Turner presiding. Thank you. Good morning. We're here on case number 4-220-927. That's Antgren v. Capps v. Pekin Insurance Company. Would counsel for the appellate please identify yourself? Julietta Kosiba. Okay, thank you. And counsel for the appellate, would you please state your name for the record? Absolutely. James Van Reden. Thank you. Ms. Kosiba, you may proceed with your argument. Thank you. This appeal concerns a citation proceeding that was instituted by Amrin as the plaintiff and judgment creditor against third-party respondent Pekin Insurance Company for recovery on a judgment that was obtained against defendant and judgment debtor Clarence D. Capps in the amount of $97,676.66. The judgment was obtained on the basis of Mr. Capps' negligence in driving a vehicle into a bucket lift truck owned by Amrin on December 5, 2017 while operating a Ford Focus that was owned by Michael L. Toft. And the Ford Focus at the time of the accident was insured by a policy that Pekin issued to Mr. Toft, policy number 00P-67-1154. Amrin sued Mr. Capps and Mr. Toft in the underlying case. Mr. Capps proceeded pro se and Mr. Toft was represented by the same counsel that is representing Pekin in the citation proceeding. Mr. Toft was voluntarily dismissed without objection by his counsel and then Amrin filed a motion for summary judgment against Mr. Capps. The motion was briefed and heard and the circuit court granted the motion and entered judgment on December 6, 2021. Although Pekin complains about the judgment being entered against an unrepresented party, it identifies no deficiency with the judgment or the manner in which it was obtained. Now after obtaining judgment, Amrin filed a citation to discover assets pursuant to section 2-1402 of the Illinois Code of Civil Procedure and it issued a records and deposition subpoena to Pekin pursuant to Illinois Supreme Court rule 277E. Pekin filed a motion to quash that subpoena arguing that the insurance policy is not relevant. Pekin did not deny the existence of the policy or its potential applicability. Rather, it argued that the policy did not provide coverage because Mr. Capps was purportedly not a permissive driver and had refused coverage. Meanwhile, Amrin filed a motion for turnover order pursuant to section 2-1402C seeking that Pekin be compelled to deliver a proceeds under the insurance policy up to the $300,000 limit identified in that policy on the basis of the undisputed facts that were already in the record at that time. On September 14, 2022, the circuit court improperly granted Pekin's motion to quash and incorrectly denied Amrin's motion for turnover order. Amrin and Pekin, the only parties to this appeal, agree as to what issues are presented for review and the standard of review. I will first start with the appellant's argument that the turnover order was entitled to an order compelling Pekin to deliver the insurance proceeds under the policy to satisfy the December 6, 2021 judgment. Let me raise a question here. Isn't the issue in this case about whether Capps was a permissive driver under the insurance policy? Yes, that is the issue regarding the coverage question which relates to Amrin's motion. So, if he were a permissive driver under the policy, then Pekin would have to cover him and protections of the policy would apply, and if he were not, then they would not. Would that be correct? As to the coverage question, that's correct. If Mr. Capps qualified as a permissive driver, then there would be coverage. Isn't the question of whether he was a permissive driver a question of fact? It involves an analysis of the facts, but it is our position that the facts in the record are undisputed, and the question is of application of those undisputed facts. Well, among other facts in the record that you attached in your response of depositions of Toft and Turner, one of them was that Turner was in a romantic relationship with Capps, and on the day in question, Capps asked to use their car, and this is, I think, from your argument, quote, although Turner claimed she said no, she handed over the keys to the vehicle to Capps, allegedly so that he could obtain something from the car, unquote, did not make any statements or place any restrictions on his use of the keys. Now, pausing right there, it seems to me, if I were the trier of fact on this question, if I were the judge hearing all of this, it might be very helpful to actually see and hear the witnesses who are testified, to see what exactly, what did Turner say, and how did she say it, and to see cross-examination of her for that matter, which is, oh, I never really gave her permission, where the trier of fact could conclude, based upon her testimony, no, I don't think that's what really happened here, I think this is after the fact, thinking on her part, that she really gave him the keys, he was going to be driving the car, using the car, but here we just have a written document, and so my question is, in the absence of actual live testimony, how's the trial court supposed to resolve this, and for instance, when you say, although Turner claims she said no, she handed over the keys to Capps, why isn't the trial court permitted to give weight to Turner saying, no, you can't use the car, even though it's not believable, how do we resolve this? It is our position that, based on the undisputed record, as it existed, coverage should have been found, but to the extent that any credibility determinations should have been made, or any further evidence evaluated, Amarant should have been given the rights to conduct the discovery that was requested, which is the issue with the circuit court denying, or granting the motion to Quash, and depriving Amarant to the right to obtain discovery, and then present the evidence at hearing, pursuant to the rules and code of procedure. Did you ask to subpoena, and have Turner testify at the hearing? The first step was to subpoena Pekin, and discover what additional evidence they had. Well, everyone knew what the evidence was going to be, based upon what you had here, everyone knew what the issue was going to be. The key issue is, what did Turner do, and how did she do it? What did she say, when she gave Caps the key? Isn't that it? It would be our position that that is not the issue. The issue is that, based on the evidence in the record, initial permission was granted under the initial permission rule to Ms. Turner by her foster father, Mr. Toft, who owned the vehicle. And based on that initial permission, and the initial permission rule, Amarant did not have to prove any further authorization, or permission to Mr. Caps. It was Pekin's burden to prove any exception to that rule. Well, leaving aside whose burden is to the moment, the question is, did Caps have agreed that was the issue? Well, the issue is whether he's a covered driver, a permissive driver. And under, excuse me, under the initial permission rule, which was adopted by the Illinois Supreme Court, permission is found once, and no further permission need to be shown to the subsequent driver. Well, you mean if Caps had stolen the car after Turner had given permission? He's covered? No. There are two exceptions to the initial permission rule, and that's theft or tortious conversion. And Pekin had the burden to establish that an exception applied. Otherwise, coverage should have been found under the omnibus clause of the insurance policy, and the initial permission rule. But the only evidence we have pertaining to the actual turnover of the cars, Turner says no. She said no when Caps asked her to use the car. And, you know, you never had a proceeding where you said, we want Turner to be here in open court so we can ask questions of him. Yes, that is our position that based on the evidence in the record, the relevant question is the permission that Mr. Toft granted to Ms. Turner, and thereafter it was Pekin's burden to show a tortious conversion, which based on the record, it is our position that there was no evidence of tortious conversion. Well, if it's true that Turner told Caps, no, you can't use the car, and he said, I got something in it, I want to get out. And she gave him the keys for that. Why is it a sub supreme driving a tortious conversion? It is because tortious conversion, as defined by the Illinois Supreme Court requires a showing of a substantial interference with or deprivation of an owner's right in the vehicle, as well as of his rights therein. And in adopting that definition, in the Verucci case, the Illinois Supreme Court specifically rejected the traditional definition of tortuous conversion. What definition you just gave wouldn't apply to Caps when he took the car without permission. It is our position that he had at least implied permission, but nevertheless, there's no evidence that he took it. Wait, what is the basis of the implied permission? She says no. And then thereafter, she hands him the keys to the vehicle without any restrictions or limitations imposed on that. And she never says at any point, which she admitted in her deposition, that she did not tell Mr. Caps specifically that he was not allowed to drive the car. Counsel, isn't there some evidence that in the past she had allowed him to possess the keys to get something out of the vehicle? There was some testimony in our deposition to that effect. That's correct. And what is our standard of review? De novo. Even though there are factual questions that had to be resolved with regard to permission, our standard would still be de novo? It seems like it would be manifest way. Why am I wrong on that? The specific supporting case law was included in our brief, but there's several reasons for that. And one of the primary ones is because the circuit court evaluated, made a ruling based on evidence in the record. There was no live testimony presented to it in court. Well, following up on Justice Turner's question, why shouldn't we, as the trial court did, accept at face value Turner's statement that she said, no, you can't drive the car? That was her testimony under oath. Okay, so why doesn't that begin and end with space? Again, what you're arguing to us, I just don't understand how you could do it, is the trial court shouldn't have believed Turner when she said what she did, and we shouldn't either. Based upon what? It is our position that it's not an issue of accredited determination. We agree as to what Ms. Turner said. It's our position that under the initial permission rule, the only question was left for the trial court to consider. And it was not disputed at any point that Ms. Turner had permission from Mr. Toff to use the car and that Capps obtained the car from her. And so therefore, the inquiry ends right there. That coverage is fixed, even without any further showing of permission. And it was Pekin's burden to show that any exception applied. And under the exception, the tortuous conversion exception, which was the only one that the circuit court could have based its finding on, was specifically defined by the Illinois Supreme Court and required substantial interference and intent to indefinitely deprive. And there isn't a record. There isn't any evidence in the record that supports that kind of finding. Ms. Kosiba, was Capps deposed? He was not. Okay. It would seem like you only got one side of the conversation there. Why wasn't he deposed? No party had requested it. And as I indicated, it was Pekin's burden to prove that an exception applied. So if that was necessary, that was incumbent upon Pekin to request that. But Pekin asked to move to a quash our deposition and stop at the proceedings at that point. Well, you didn't ask for a deposition of Capps though, did you? We did not. Okay. Thank you. So further to the point, there is no evidence that Mr. Capps had an intent to indefinitely deprive Mr. Toft or Ms. Turner of the board focus. And given that absence of the evidence, Pekin argues that Mr. Capps had that intent because he was an unauthorized driver. That argument, once again, ignores that under the initial permission rule, Mr. Capps did not need any specific authorization. Although, as I previously argued, he did have at least implied permission when Ms. Turner handed him over the keys without any limitation and did not revoke the implied consent. There is also no evidence that Mr. Capps substantially interfered with or deprived with Mr. Toft or Ms. Turner's use of the Ford focus. Pekin claims that there was a substantial interference because Mr. Capps allegedly drove the vehicle for 2.2 miles. That calculation is based on Pekin's representation of a Google claims to be the location of Ms. Turner's employment. Well, wasn't there an accident which occurred and wasn't the car damaged badly? Yes, we know the location. Why does it matter how long the car was driven or how far or how long he had it when the car was no longer operable after the accident? In other words, he might have been planning to drive to California and never return. We don't know. You never asked him. He's got this car and he's driven it 2.2 miles and he doesn't total it. It's pretty well damaged. Maybe it is total. And that's all we know about this, isn't it? That's right. And based on that, we're supposed to infer that he was just thinking for a joyride and within a few minutes plan to return it to Turner and no harm done. Is that right? I would not say that. I would say that it's Pekin's burden to show once again that there was an actual torches conversion and Pekin did not carry that burden. Therefore, it would have been improper for the circuit court to find a torches conversion. And to the extent that there was any question about a torches conversion, then Ameren should have been granted the opportunity to conduct discovery on that issue. Accordingly, the circuit court improperly granted Pekin's motion to quash pursuant to section 2-1402 of the code and rule 277, Ameren was entitled to discover assets, to identify any non-exempt assets that could be applied to the judgment. And under rule 277, that extends to any insurance proceeds that may have constituted an asset of Mr. Capps. The only limitation that was imposed on this by rule 277 was the circuit court's power to terminate the deposition and otherwise control and direct the proceedings to ensure the interests of all parties and persons were protected and harassment avoided. Pekin did not argue that the requested deposition infringed on any of its rights or otherwise constituted harassment, but only argued that the requested discovery was not relevant and not needed since the insurance policy which it contended was the only piece of only relevant piece of evidence was already produced. Wasn't that true? You already knew. In fact, again, everything about this case is known except the whole question about was Capps a permissive user. That's the only factual issue. An issue here, isn't it? Well, to the extent that there's a question of coverage and whether Mr. Capps, and particularly on the torches conversion exception. I mean, it's not as if you need discovery to get the policy, do you? Not as to the policy, that's correct. We have the policy, but to the extent that there's a question of coverage and Pekin is arguing that there's coverage based on the torches conversion exception, that goes outside of the four corners of the policy. And Pekin itself attached a separate document to support its motion to quash. Therefore, given the issues of coverage raised by Pekin and Illinois liberal discovery procedures, the circuit court should have denied Pekin's motion to quash. Thank you, counsel. You're reading for the appellee Pekin insurance company. At the outset, I do think it is important to distinguish here that there are two issues up on appeal involving two different pleadings in this case. First, a motion to wash the subpoena for a corporate representative deposition under rule a Pekin filed that motion to quash. And second, the motion for turnover, which was filed by the plaintiff in this case, in which they have a burden to support their claims if they were to succeed on that. So we do have two separate issues here that I hope not to conflate. As far as the facts that are pertinent to this case, I think your honors have already hit those facts on the head here. As to the motion for turnover, Mr. Capps arrived at Ms. Turner's place of work, asked if he could use the car. She said no, clearly understanding that that meant he not drive the car. He made a lesser request to access the car to retrieve items. She said yes, and gave him the keys for that purpose. He then took off with the car after being told no, that he could not use it and was going to use it for some indefinite period of time, but for the fact that he collided with Ameren's bucket truck. As far as the motion to quash the pertinent facts, there are that plaintiff titled their subpoena as a subpoena pursuant to Illinois Supreme Court Rule 206A1 for a corporate representative of Pekin Insurance. In this case, the plaintiff already had a copy of the policy, had a copy of the policy limits, had answers to written discovery from Mr. Tuff that indicated that that was the only policy that was even arguably relevant to this case. Plaintiff had everything that they needed from Pekin Insurance. And so those are the operative facts and procedural positioning of this case. Moving to the motion to quash. So what's our standard of review? I did research that issue, Your Honor, because it was somewhat interesting to me in this case. I also believe that it would likely be a more discretionary standard of review. In my research, it was supported that it was de novo based on how the decision was reached at the trial court in this case. Though I don't perfectly agree with all of the reasoning and case law that was included in the plaintiff's brief, I do ultimately agree that from my research, the proper standard of review is de novo. Thank you. Absolutely. Moving on to the motion to quash the subpoena. Again, this subpoena was brought and titled pursuant to Illinois Supreme Court Rule 206A1, which is a discovery provision, and it requested the deposition of a corporate representative of Pekin Insurance. In the motion to quash, Pekin Insurance argued there should be no corporate deposition of a Pekin Insurance individual, as plaintiff already has all the relevant information that individual could provide, a copy of the policy and the policy limits. That was known to the plaintiff. This corporate representative wouldn't have had any information as to the actual transgressions between Kapsin Toft or Kapsin Turner, and we simply challenged that no additional relevant information could be garnished from this deposition. Through plaintiff's response at the trial court and in this case, I'm still unclear on what purpose such a deposition would have. Rule 277E does not grant the plaintiff unbridled ability to depose anyone and everyone they want with absolutely no relevant information to be gained from that. And so the fact of the matter is there would be no relevant information that such a corporate representative deposition could garnish in this case. Plaintiff failed to raise any such relevant information, and it was properly granted at the case. Moving on to plaintiff's motion for turnover. Your honors have astutely hit on the issues in this case. The question is whether or not there was a tortious conversion. In the Illinois Supreme Court case of Verrucci, the court lays out the standard there as insurance coverage is provided unless the subsequent user of the vehicle gained possession of it with the intent to permanently, that'd be theft, or indefinitely, that'd be tortious conversion, deprive the owner of the rights therein or the initial permittee of the rights therein. In this case, Capps asked if he could use the vehicle. The answer is no. He then took the vehicle in direct opposition to the rights of the initial permittee and Mr. Toth, the owner, because he was told no and he took the vehicle. He took it for an indefinite amount of time because there's no evidence here he was moving it across the street, that he was going to the gas station and coming back, or that he was just switching parking spots. No, he took it, he traveled a matter of miles, and we have no idea how long he was going to take it for. That's what indefinitely means. Indefinitely doesn't mean for a long time. It means for an unknown time, and that's exactly what we have here. The facts on the record... So let me stop you there. My only question about that is, the owner was not Turner, so was the indefinite deprivation... Does that relate to Turner or to the owner? Are you saying it doesn't matter? Is there one and the same? Well, so if I go back to that Illinois Supreme Court quote from Verrucci, it actually says to deprive the owner or the initial permittee of the rights therein. Okay, thank you. That's accurate, Your Honor. So in this case, we have all of the elements of tortious conversion that was shown to the trial court, and the trial court appropriately denied plaintiff's motion for turnover. It was plaintiff that asked for that determination. It was not a motion brought by the Appellee, Peek, and Insurance in this case. The plaintiff at no point requested the deposition of Capps or live testimony from Capps or Turner to provide additional information or commentary on that. They took out the sword with the motion to turn over, and unfortunately for the plaintiff, the result fell against them. And so with that, the denial of the motion for turnover was proper and should be affirmed as well. And I will rest on my arguments unless Your Honors have any questions for me. I don't see any questions. Thank you. Is there any rebuttal? Just briefly, I do agree, and it is undisputed that it was Amron's motion for turnover order. That motion was once again based on the evidence in the record, the deposition testimony that both parties agreed was evidence in the record. It was Amron's burden to show that the initial permission rule applied, and under that rule, coverage was fixed at the time of the accident. It was Peekin's burden to establish the exception to that rule, as I mentioned, and Peekin failed to do so for all the reasons that I already explained. Okay. Do my colleagues have any questions? Doesn't appear so. Thank you to both of you for your arguments. The case is submitted, and the court will now stand in recess.